James M. Morris, Esq.
DC 999997; GA 757959; KY 85709; OH 76161; TN 28992; VA C-83043
217 North Upper Street
Lexington, Kentucky, 40507
859.281.6981
jmorris@morris-morrislaw.com
ATTORNEY FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| KENNETH DAY, | CASE NO. 4:11-cv-00186-TUC-CKJ |
|---|---|
| Plaintiff | |
| VS. | **NOTICE OF FILING OF NEWLY-DISCOVERED EVIDENCE OF PATTERN AND PRACTICE OF SPOLIATION AND REQUEST FOR ADDITIONAL HEARING RELATED THERETO** |
| LSI CORPORATION, | |
| Defendant | |

Comes the Plaintiff Kenneth Day ["Day"], by and through counsel, and, provides this Notice of Filing of Newly-Discovered Evidence of LSI's ongoing Pattern and Practice of Spoliation, and Request for Additional Hearing Related Thereto. On August 2, 2012, the undersigned uncovered, for the first time, the attached Motion for Spoliation Instruction, filed of record on or about June 11, 2012, in the Eastern District of Pennsylvania, in the employment discrimination matter of Stacy v. LSI Corporation, 5:10-cv-04693-ER. *See* Exhibit "A."

This newly-discovered evidence is critical to the current Motions under consideration by this tribunal. Incredibly, the very same actors involved in the within debacle were previously involved in the Stacy spoliation issue: Littler & Mendelson; Robert W. Cameron; Paul J. Bento; Robert England; and LSI's General Counsel, Jean Rankin. Chief among those participants was none other than Paul Bento, LSI's Vice President of Law. Much as he claims

to have done in this case,<sup>FN1</sup> Bento picked and chose which select few individuals would actually receive the litigation hold. Also, much like the within matter, it was **_Bento_**, unilaterally, who determined what was, and was not "relevant" for purposes of document retention. Identically to the actions taken in the within matter, Bento simply declared that substantial segments of records were simply "irrelevant" and not worthy of preservation. *See* Bento Depo., Exhibit "A", at Exhibit 12. Some of the exact same types of issues that have been rampant throughout the within matter, are identified during the excerpts of Bento's testimony in the Stacy matter.

    The Stacy litigation hold that was eventually sent out was not only limited in terms of which individuals were notified, but it also was limited in terms of what Bento even requested be retained. *See*, *e.g.*, Exhibit "A," at Exhibit 6, 10, and 13 (each copied to General Counsel Jean Rankin). Exhibit 10 and Exhibit 13 further reflect that each Litigation Hold document was actually copied to Littler Mendelson, attorney Robert Cameron, as well as General Counsel Jean Rankin. The initial Litigation Hold (Exhibit 6) identifies the precise issue that has been experienced in the within matter. The correspondence is grossly incompetent, fails to notify the appropriate individuals, and fails to include an appropriate scope of records required to be retained. That fact is clearly demonstrated in the subsequent Litigation Holds, where additional individuals were finally (untimely) notified (Exhibit 13), and where the types of records that are actually supposed to have been retained were finally identified (Exhibit 10).

---

    <sup>FN1</sup> Unlike the Stacy matter, where Bento's wholly inadequate "litigation hold" notices were produced, no such record has actually been produced in this case. A quick review of the Stacy Litigation Holds demonstrates the frivolous nature of the types of "holds" being issued by LSI by and through Bento.

Additionally, in the Stacy matter (as it did here), LSI called upon its IT representative, Robert England, to provide testimony regarding the destruction, loss, and overwriting of Electronically Stored Information. However, in so doing, Mr. England makes affirmative representations that are of extreme significance to the issues here, inasmuch as they contradict the affirmative representations made by LSI in *this* litigation. For example, England states, at ¶6, that "LSI uses Exchange 2008, equipped with xMerge, as its e-mail application, which allows LSI to export .pst files for specific users, if necessary.... [i]n mid-2010, LSI began storing back-up files on a monthly basis. *The monthly back-up files are maintained offsite for a period of one year*. Individual users ... have the ability to create locally archived .pst files for purposes of saving older messages once their mailbox reaches its maximum size capacity." *See* Exhibit "A," Exhibit 3. England goes on to affirmatively state that in the Stacy matter, unlike the within matter, "the computers used by LSI employees [relevant to the claims] have been mirror-imaged to preserve any and all data that may be relevant to this litigation. *LSI has put a hold on all Outlook .pst files maintained on the local drives of LSI computers used by [various employees] so that they may be searched for any and all data that may be relevant to this litigation*." Id. [Emphasis added.]

As this Court may recall, England testified, in the course of this litigation, that Bento failed to request that all records, from all sources, be preserved, and that a search of all records be undertaken with regard to Day and Day's claims. Instead, the search was limited, solely, to Day's Exchange "outbox" and any PCBackup that may have otherwise existed. Conversely, in the Stacy matter, in the Litigation Hold attached as Exhibit 10 and 13 to the Stacy Motion, Bento dictates:

> Please *immediately* take all steps necessary to preserve all e-mail and other

3

> electronically stored information concerning Janis (Jan) or (Jim) Stacy ("Stacy"), any work or services that Stacy performed for LSI Corporation or Agere Systems, Inc., and any correspondence (including e-mail and instant messages) with Stacy that may be found on the company's servers, hard drives, laptops, hand-held devices, or any backup tapes.
>
> To carry out this purpose, you will be required to preserve electronically stored information created or received by the following current and former employees in addition to Stacy []. Please retain and preserve all of the foregoing, and ensure that your staff understands the obligation to retain and preserve this data in its entirety.
>
> It is also imperative that we (1) remove promptly from circulation any backup tapes (both accessible and inaccessible) containing any documents or data generated or maintained by Stacy's immediate supervisors; (2) preserve the actual or a complete mirror-image of the hard drives of the computers used by the foregoing persons, if any; and (3) to the extent feasible, suspend programs that might otherwise cause the automated destruction of electronically stored information concerning Stacy.

*See* Exhibit "A," Exhibit 10.

In Exhibit "A," Exhibit 13, Bento further directed in the Stacy matter that all files, of whatever nature, were to be retained, not simply limited to the "inbox" and the PCBackup, as he identified here to England with regard to Day. In addition, Bento goes on to state:

> [The retention] includes all files, notes, drafts, correspondence, calendars, diaries, memos, electronic files (all versions), sent and received e-mails, etc., or any other writings exchanged between or among us and any of the parties to the lawsuit and documents or records kept by us regarding or relating to Ms. Stacy and her employment. Please rview your files ***and any files of other current or former employees*** in your possession that may have pertinent information and provide these records... Preservation of all records of even marginal signiciance is of critical importance.

Id. [Emphasis added.]

In yet another example of the egregious misconduct and intentional acts undertaken by LSI in regard to Day, and the claims raised herein, the Stacy Motion reveals that, unlike the within matter, where LSI claims that the Human Resources investigation was completely

and utterly "undocumented," and "verbal," in Stacy, Defendant identified the specific directives issued by Paul Bento, to Human Resources, with regard to conducting a ***documented*** investigation into discrimination allegations.  *See* Exhibit "A," Exhibit 6. Immediately thereafter, in Stacy, LSI went to great lengths to gather the appropriate documentation and obtain ***written*** statements, (Exhibit "A," Exhibit 9), all in accordance with the LSI's Policies and Procedures.  Contrary to the guidelines set forth by Bento, and LSI, in Stacy, in the within matter LSI undertook ***no*** measures to obtain written statements and, in fact, according to the accused individual, ***never even informed him that any allegations had been raised regarding his discriminatory actions***!  No documentation was gathered; Bento never even determined who Day's supervisor was who was directly involved in the hiring of Day, and who supervised him throughout his initial year of employment (and conducted the critical 2008 Performance Evaluation).  Such dichotomy between the steps taken in Stacy and the steps taken in Day, are critical to this Court's assessment of the intentional nature of LSI's actions, by and through Bento, and others.

The documentation reflected in Exhibit "A," reveals a vastly different story than that spun by Defendant, and its counsel, in the within matter.  First, contrary to Defendant's assertion that searches other than the e-mail "inbox" are not capable of being performed is contradicted by the steps that were ultimately carried out in the Stacy matter.  Human Resources does undertake appropriately documented investigations upon request from Bento. Finally, LSI's "litigation holds" can, and do, obviously contain directives for additional documentation, and, in the case of Stacy, dictated a complete search of all servers throughout the company for records that might have been relevant to Stacy's claims.

While it is clear that the Plaintiff in Stacy has had a substantial measure of difficulty

5

with regard to obtaining records, and LSI's record keeping, her issues pale in comparison to those experienced by Day throughout the within matter. In fact, in comparing the two scenarios, it is clear that, albeit extraordinarily tardy in its efforts in Stacy, LSI at least followed some modicum of responsibility in carrying out its duties with regard to electronic documentation. Here, LSI's actions are much more egregious, which is made worse by the fact that LSI had already experienced the issues in Stacy, and knew, or should have known the proper method to retain electronically-stored records.

However, instead of "learning" from the errors they made in Stacy, Bento and company actually expanded upon the types of misconduct identified therein and proceeded to go much further with the destruction, overwriting, failure to retain, and failure to notify as to the need to retain electronic, and other, records pertaining to Day, Day's claims, Day's employment, and the circumstances giving rise to the within matter.

WHEREFORE, given the serious nature of the issues that have now been uncovered, and the fact that it now appears that Bento and company are engaging in an ongoing pattern of misconduct, destruction of evidence, manipulation and withholding of data, and other malfeasance designed expressly to undermine the capability of Day, and others, to prosecute valid claims, Day respectfully requests that the Court schedule the within matter for a supplemental Hearing to allow Plaintiff to address the impact of this additional evidence, and, in addition, require Defendant to Show Cause as to why these instances have transpired, given the previous actions, much earlier, in the Stacy matter.

        MORRIS & MORRIS, P.S.C.

By:   /s/ *James M. Morris*
      James M. Morris
      DC 999997; GA 757959; KY 85709; OH 76161; TN 28992; VA C-83043
217 North Upper Street
Lexington, Kentucky 40507
Telephone: (859) 281-6981
Facsimile: (859) 233-7876
ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

This is to certify that the foregoing has been electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 7th day of August, 2012, to:

| | |
|---|---|
| Kristy Peters, Esq. | Robert W. Cameron, Esq. |
| LITTLER MENDELSON, P.C. | LITTLER MENDELSON |
| Camelback Esplanade | A Professional Corporation |
| 2425 East Camelback Road, Suite 900 | 625 Liberty Avenue, 26th Floor |
| Phoenix, AZ 85016-4242 | Pittsburgh, PA 15222 |

        /s/ *James M. Morris*
        ATTORNEY FOR PLAINTIFF

M:\EMPLOY\Day\Filing.Stacy.wpd